# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed September 14, 1927.

THE ELECTRIC PUBLIC UTILITIES COMPANY, A BODY CORPORATE, ORGANIZED UNDER THE LAWS OF DELAWARE, COMPLAINANT, VS.

HAROLD E. WEST, J. FRANK HARPER AND EZRA B. WHITMAN, CONSTITUTING THE PUBLIC SERVICE COMMISSION OF MARYLAND, RESPONDENTS.

*Clarence W. Miles* (*Miles & Edgett*), solicitors for the Electric Public Utilities Co., complainant.

*Raymond S. Williams*, special counsel to the Public Service Commission, solicitor for the respondent.

STANTON, J. (Orally)—

Since the argument in this case, gentlemen, I have given it the consideration which I think its importance required as well as the ability of the Court will permit. I have already acknowledged the very great ability exhibited by counsel on their exhaustive examination of the authorities and their very forceful presentation of their respective contentions.

The facts disclose that The Electric Public Utilities Company, a Delaware corporation, made application to The Public Service Commission of Maryland, under Section 394 of Article 23, of The Code of Public General Laws, by a petition filed on May 13th, 1927, for authority to purchase and acquire all of the respective capital stock of the Home Electric Light Company of Lonaconing, the Emmitsburg Electric Company, the Antietam Electric Light and Power Company, and the Midland Electric Light Company, each and all of said four companies being Maryland corporations, with an aggregate capital stock totaling par value of $45,375, for which the applicant was to pay $468,000 in cash, and assume the payment of a bonded debt of $50,000, issued by one of the four corporations and outstanding. The applicant sought further authority of the Public Service Commission to pledge the said stock ($45,375), as part of and together with other stocks which The Electric Public Utilities Company proposed to pledge under a trust agreement with the Guaranty Trust Company of New York, Trustee, as security for an issue of $4,000,000, six per Centum Gold Bonds. The Public Service Commission conducted a hearing on the petition and application, and thereafter, on May 28th, 1927, filed an opinion and passed an order delaying the authority prayed in the petition and application. The Commission refused to approve the application on the ground that the evidence before it did not show that the action for which approval was sought, was in the public interest.

Subsequently, at the request of the applicant, the Commission conducted another hearing at which the applicant offered testimony to support the contention that the public interest would be benefited through the acquisition of the stocks of the four Maryland corporations, and on July 13th, 1927, the Commission passed an order ratifying and confirming its prior order of May 28th, 1927.

This action of the Commission is attacked in the bill of complaint filed in this case. Generally the objections to the order are grouped, as follows:

(1) Section 394 of Article 23, of the Code of Public General Laws (Public Service Commission Law), is unconstitutional, because it constitutes a delegation of the real law making power of the State and vests the Commission

of legislative discretion by a statute which does not determine what the public policy demands.

(2) That the order is unlawful and unreasonable, because Section 394 confers power to exercise a discretion without setting up any standards or rules to guide the exercise of such discretion with which it has been vested.

(3) That the order impairs the obligation of the applicant's contracts, and takes its property without due compensation, and for these reasons it is unlawful.

(4) That the order is unreasonable in that on its face it does not contain the findings, or disclose the reasons, indicating wherein the approval of the application is against the public interest.

(5) That the order is unlawful and unreasonable in that it is an arbitrary restriction, that bears no definite or substantial relation to the regulation by said Commission of the rates, service. or issuance of securities, and use of proceeds thereof.

Section 394 is a verbatim reproduction of a similar provision in the Public Service Act of New York passed in 1907. It has been said by counsel that in that State it has since been amended. In this State it stands as originally enacted. Counsel further assert in the argument of this case, that the question now before the Court arising under this Section 394, has never been decided by any Court of last resort, nor has any decision at nisi prius been found. The issue is of the utmost importance, because it involves the power of the State, acting through the Public Service Commission, to regulate and control the purchase of stock of an electrical company, chartered under the laws of the State of Maryland, by a foreign corportion, which is a holding company for the securities of these Maryland corporations, and similar corporations in other States, as far south as Texas, Mississippi and Florida ; and as far west as Colorado and Oklahoma, and also in Ohio. These securities are to be pledged under a trust agreement to cover an issue of bonds aggregating $4,000,000.

The extent and magnitude of this form of financing has been the subject of recent discussion in the public press, and occupied the thought and some of the writings of political economists. The present owner of the stocks of these four Maryland corporations is an individual named O'Hara, who is a resident of the State of New York. So that the purchase of the capital stock of these four domestic corporations for which approval of transfer is sought, and the authority to pledge the stock, is a transaction by an individual nonresident of the State of Maryland and a foreign corporation.

The argument on behalf of the Complainant is that notwithstanding Section 394, as to domestic corporations, is complete in its control, even to contracts for the operation of the works and system of a Maryland electrical corporation ; that because the Complainant is a foreign corporation, the power of the Public Service Commission is perfunctory in its approval of the transfer of the stock of these four Maryland corporations and must be granted as a matter of right because the transaction in no manner involves rates, service or issuance of securities by the Maryland corporations. Directly that may be true, indirectly it is far from the real effect of the transaction, for which approval is sought. It is not free from doubt that all three of the elements—rates, service and securities —may be involved, and thereby arises the public interest to be affected.

This foreign holding corporation declares on the record its purpose to charge for supervision of the local companies, and this in effect, is nothing but a contract for the operation of the works and system of the local companies. This could not be done by a Maryland corporation, without the approval of the Commission. Whatever the charge might be for supervision it is an operating cost, which must come out of the profits, or may lay the foundation for a complaint that the rate does not yield the cost of operation. But apart from the indirect control of the works or system by a foreign corporation, the pledging of capital stock to the value of $45,375, to cover securities to be issued reflecting a cost to the Electric Public Utilities Company of $468,000 cash, plus $50,000 outstanding bonds, will entail an interest charge approximating, if not wholly amounting to $30,000. If the Maryland companies are required to carry this interest cost then on the present earnings of about $32,000 net, there is nothing ahead but increased rates or bankruptcy—entailing re-organization, or entire loss of electric service (both

light and power), to the communities now served by these corporations. High pressure salesmanship to extend the use of electric light and power and thereby increase the revenue in these communities, which the record shows have about reached their full demand, is so doubtful as to give little or no promise of results.

It is conceded that in this proceeding the Court does not substitute its judgment for the findings of the Commission. The sole issue is whether the order is unlawful or unreasonable. There are conditions about which judgments may differ, but on the record in this case it certainly cannot be said that the order is unreasonable nor is it difficult to perceive, how the public interest is involved. If the record, taken as a whole, shows the facts on which the order is founded, the law does not require that the order itself should embody the facts on which it is based. The test of the validity of the order is not a statement of its reasons for the order, but the unreasonableness of the order. (See West et al. vs. Byron et al., The Daily Record, August 5th, 1927.)

As to the constitutionality of Section 394, only this need be said. The Complainant contends that it is doubtfully *only*—and that all doubt could be removed if Section 394 is construed to mean that the approval for the purchase and transfer of the stock of these four Maryland corporations must be given as a matter of course, unless the approval of the application involves questions of rates, service, or securities of the local corporations. It is a well recognized rule of construction that all doubts are to be resolved in favor of the constitutionality of a statute, and applying this rule Section 394 should be sustained. But as has been heretofore said, both rates and service may be involved, although not directly the subject of inquiry in the record now before the Court. Rates, service and securities are some of the factors of corporate supervision to be dealt with by the Public Service Commission but not the only ones, and if the Legislature had intended to limit the power as to purchase and transfer of the stock of Maryland corporations as conferred in Section 394, as discretionary only when rates, service or securities were being investigated and heard, it is reasonable to assume that the Legislature would have so provided in express language. Especially is this true when we find the same power conferred in Section 379—when the Legislature was dealing with the purchase and transfer of the capital stock of railroads and street railways—although it expressly mentions foreign as well as domestic corporations when limiting the right to purchase, and in this respect only is it different from the restrictions contained in Section 394.

The power conferred on the Commission in Section 394 is salutary for the adequate and complete protection of the public interest of the citizens of this State. It has had the acquiescence of the administrative authorities and the corporations affected for seventeen years, and is not to be set aside unless it is clearly made to appear to be against some inhibition of the Constitution.

This Section 394 was in the law when these contracts were negotiated and was public notice to all purchasers of the stock of these four corporations just what were the limitations and what would be required to obtain a transfer of the same. There can be no substance to the complaint about impairing contracts or taking property without compensation.

Even assuming but not deciding that foreign corporations are not within the words "No such corporation shall directly or indirectly acquire the stock or bonds of any other corporation * * * unless authorized to do so by the commission," because when contrasted with similar provisions in Section 379 the Legislature made that Section read "No railroad or street railroad corporation, *domestic or foreign*, shall hereafter purchase or acquire, take or hold any part of the capital stock, etc.," the fact is, that the Complainant—foreign corporation as it is—has submitted itself to the jurisdiction of the Public Service Commission of Maryland and is bound by its orders to the same extent as a domestic corporation. The approval of the purchase and transfer is not a matter of right to the applicant but involves the exercise of a discretion vested in the Commission. In the exercise of the discretion all orders of the Commission must be sustained by the Court, unless it is made to appear that they are unlawful or unreasonable, and the burden of proof to sustain this contention is on the Complainant.

Art. 23, Sec. 408.

These standards are prescribed by the Act itself. This record does not disclose that either standard or rule has been violated.

For these reasons the order of the Commission is affirmed, the bill of complaint is dismissed; Complainant to pay the costs.

An order will be signed accordingly.